ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **EMILIANO PAGÁN PÉREZ**<br>DEMANDANTE(S)-APELADA(S)<br><br>V.<br><br>**EDLYN PAGÁN OTERO**<br>DEMANDADA(S)-APELANTE(S) | **KLAN202400901** | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **CIALES**<br><br>Caso Núm.<br>**CI2022CV00341 (100)**<br><br>Sobre:<br>Deslinde y Amojonamiento |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 24 de abril de 2026.

Comparece ante este Tribunal de Apelaciones, la señora **EDLYN PAGÁN OTERO** (señora **PAGÁN OTERO**) mediante *Apelación Civil* interpuesta el 7 de octubre de 2024. En su escrito, nos solicita que revisemos la *Sentencia* emitida el 20 de agosto de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Ciales.[1] En dicha decisión judicial, se declaró ha lugar la *Demanda* incoada el 5 de diciembre de 2022 por el señor **EMILIANO PAGÁN PÉREZ** (señor **PAGÁN PÉREZ**); y concluyó lo siguiente: (i) los linderos que separan la propiedad A1 de la A2 discurren desde el punto cuarenta y dos hasta el punto cincuenta del plano preparado por el ingeniero Ramos; (ii) la verja recientemente construida por la señora **PAGÁN OTERO** deberá ser corregida o removida a los fines de que la misma discurra por los linderos establecidos; (iii) la señora **PAGÁN OTERO** continuará utilizando el pozo séptico que ubica en el solar perteneciente al señor **PAGÁN PÉREZ**; y (iv) se restituye al señor

---

[1] Este dictamen judicial fue notificado y archivado en autos el 21 de agosto de 2024. Apéndice de la *Apelación Civil*, págs. 1-8.

Número Identificador:
SEN2026_____

**PAGÁN PÉREZ** en la posesión de la franja de terreno que fue privada por la construcción errónea de la verja.

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

- I -

El 5 de diciembre de 2022, el señor **PAGÁN PÉREZ** encausó una *Demanda* sobre deslinde y amojonamiento contra la señora **PAGÁN OTERO**.[2] El 11 de enero de 2023, la señora **PAGÁN OTERO** presentó su *Contestación a Demanda* que incluía sus defensas afirmativas.[3]

Tiempo después, el 8 de marzo de 2023, las partes presentaron el *Informe para el Manejo de Caso*.[4] Así las cosas, el 12 de junio de 2023, se celebró una audiencia en la cual, entre otras cosas, se coordinó una vista ocular.[5] El 13 de noviembre de 2023, se celebró la vista de inspección ocular.[6] En la misma, se concedió hasta el 29 de febrero de 2024 para realizar el descubrimiento de prueba y se pautó la conferencia con antelación al juicio para el 11 de marzo de 2024.

Luego de varios incidentes procesales, el 6 de marzo de 2024, las partes presentaron el *Informe Preliminar de Conferencia con Antelación a Juicio*.[7] A pocos días, el 11 de marzo de 2024, se celebró la conferencia con antelación al juicio.[8] En dicha audiencia, se señaló el juicio en su fondo para el 13 de mayo de 2024.

El 1 de abril de 2024, la señora **PAGÁN OTERO** presentó una *Moción en Solicitud de Sentencia Sumaria*.[9] Posteriormente, el 18 de abril de 2024, el señor **PAGÁN PÉREZ** presentó su *Oposición a Moción en Solicitud de Sentencia*

---

[2] Apéndice de la *Apelación Civil*, págs. 28-29.
[3] *Íd.*, págs. 30-32.
[4] *Íd.*, págs. 33-38.
[5] *Íd.*, pág. 39. La vista ocular fue coordinada para el 13 de noviembre de 2023.
[6] Apéndice de la *Apelación Civil*, págs. 40-41.
[7] *Íd.*, págs. 42-53.
[8] *Íd.*, págs. 54-55.
[9] *Íd.*, págs. 56-201. Esta acompañada de los siguientes documentos: Escritura número 5 sobre *Segregación y Adjudicación de Herencia*; Escritura número 32 sobre *Compraventa; Declaración Jurada* suscrita el 1 de abril de 2024 por la señora **PAGÁN OTERO;** 11 fotografías; *Declaración Jurada* rubricada el 1 de abril de 2024 por el señor MÍNELSON MEDINA RÍOS**;** *Deposición* de la señora Aracelis Jiménez Ortiz (12 de enero de 2024); y *Deposición* del señor **EMILIANO PAGÁN PÉREZ** (12 de enero de 2024).

*Sumaria*.[10] El 8 de mayo de 2024, se decretó una *Resolución* en la cual se declaró no ha lugar la petitoria de sentencia sumaria; se hicieron determinaciones de hechos y se dispusieron los que estaban en controversia.[11]

Las determinaciones de hechos son:

1. La parte demandante es dueña de una propiedad inmueble localizada en el barrio Perchas del municipio de Morovis. Adquirió tal inmueble en virtud de la escritura número 5 del 27 de enero de 2001 sobre Segregación y Adjudicación de Herencia, otorgada en Orocovis, Puerto Rico, ante el notario público Pedro L. Rubero Rivera.

2. La descripción registral de dicho inmueble es la siguiente: RUSTICA: Predio de terreno radicado en el Barrio Percha del término municipal de Morovis, Puerto Rico, compuesto de 760.865 metros cuadrados, en lindes por el Norte, con parcela uno; por el Sur, con remanente de la finca principal; por el Este, con carretera municipal; y por el Oeste, con Anastacia Pagán. Consta inscrita como finca número 15,820 de Morovis, Registro de la Propiedad de Manatí.

3. La señora Pagán es dueña del siguiente inmueble: RUSTICA: Predio de terreno radicado en el Barrio Perchas el término municipal de Morovis, Puerto Rico, compuesta de cuatrocientos veinticinco metros con doscientos setenta y nueve milímetros (425.279 mts.) cuadrados; en lindes por el Norte, con carretera municipal; por el Sur, con parcela dos; por el Este, con carretera municipal; y por el Oeste, con Anastacia Pagán. Es segregación de la finca número siete mil novecientos ochenta y ocho la cual consta inscrita al folio ciento ochenta del tomo ciento veintiocho de Morovis. Se halla pendiente de inscripción y calificación.

4. La demandada adquirió su propiedad en virtud de la escritura número 32 otorgada el 5 de mayo de 2001 ante el Notario Pedro L. Rubero Rivera. Mediante dicha escritura la demandada adquirió la propiedad de su padre Eduardo Pagán Pérez. Eduardo y el demandante Emiliano son hermanos.

5. Para otorgar dicha escritura se realizó un plano de segregación. El inmueble perteneciente a la demandada es "la Parcela 1".

6. Los inmuebles descritos en los párrafos anteriores son colindantes entre sí.

7. Para el año 1991 Eduardo Pagán Pérez construyó la casa que hoy pertenece a la demandada.

---

[10] Apéndice de la *Apelación Civil,* págs. 202-335. Escrito tiene anejado: *Declaración Jurada* firmada el 17 de abril de 2024 por el señor **PAGÁN PÉREZ;** *Declaración Jurada* fechada el 17 de abril de 2024 por la señora Catalina Pagán Pérez; *Declaración Jurada* signada el 20 de marzo de 1999 por el señor Eduardo Pagán Pérez; *Declaración Jurada* subscrita el 20 de marzo de 1999 por el señor **PAGÁN PÉREZ;** *Declaración Jurada* de 25 de marzo de 1999 por la señora Catalina Pagán Pérez; *Declaración Jurada* estampada el 17 de abril de 2024 por la señora Aracelis Jiménez Ortiz; Escritura numero 32 sobre *Compraventa*; *Deposición* del señor MÍNELSON MEDINA RÍOS (12 de enero de 2024); *Deposición* de la señora Aracelis Jiménez Ortiz (12 de enero de 2024); *Declaración Jurada* con fecha de 17 de abril de 2024 por la señora Emirelys Pagán Jiménez; Escritura número 5 sobre *Segregación y Adjudicación de Herencia*; *Deposición* de la señora **EDLYN PAGÁN OTERO** (12 de enero de 2024); e Informe de Trabajo de 12 de enero de 2024 firmado por el ingeniero José A. Ramos Rivera.
[11] *Íd.,* págs. 336-340.

8.      El pozo séptico que se encuentra en la parte posterior de las propiedades colindantes y que brinda servicio sanitario a la propiedad de la demandada, se construyó al mismo tiempo que la casa de la demandada.

9.      El pozo séptico siempre ha estado localizado en el mismo lugar, es aparente y antecede el plano de mensura realizado para la segregación.

10.     La propiedad de la demandada fue ocupada por sus padres hasta que estos fallecieron.

11.     Desde que Eduardo Pagán Pérez construyó su propiedad, hoy día perteneciente a la demandada, hasta el año 2005 no existió verja alguna que dividiera las colindancias entre las propiedades de las partes.

12.     En el 2005 Eduardo Pagán Pérez y la parte demandante acordaron construir una verja para que no se escapara un perro que la demandada les había regalado. Para esa fecha la demandada ya era titular de la "Parcela 1".

13.     La verja en el 2005 fue construida por el padre de la demandada.

Los hechos sobre los que existe controversia:

1.      ¿Cuáles son los linderos de los inmuebles pertenecientes a la parte demandante y a la parte demandada?

2.      Al momento de realizar la lotificación de los solares aquí en controversia ¿reconoció el señor Eduardo Pagán Pérez que el pozo séptico se encontraba en suelo ajeno?

3.      ¿Cuáles fueron los costos de construcción del pozo en controversia?

Al día siguiente, el señor **PAGÁN PÉREZ** presentó una *Moción para Presentar Prueba Documental que Será Utilizada en el Juicio*.[12] En respuesta, el 10 de mayo de 2024, la señora **PAGÁN OTERO** presentó su *Moción Presentado Prueba Documental que se Utilizará en el Juicio*.[13]

Poco después, 13 de mayo de 2024, se celebró el juicio en su fondo y, habiéndose desfilado la prueba, se concedió un término para someter los memorandos de derecho.[14] Incluimos un resumen de los testimonios brindados ante el Tribunal de Primera Instancia:

### Testimonio del ingeniero José Alfonso Ramos Rivera

Expuso ser ingeniero civil desde 1971 y estar en el Registro Permanente de Agrimensores del Colegio de Ingenieros de Puerto Rico hace unos 25 años.[15] Su número de licencia es 6,066.[16] Manifestó haber realizado sobre 1,000 trabajos de agrimensura en prácticamente toda la isla y haber testificado en algunas diez

---

[12] Apéndice de la *Apelación Civil*, págs. 341-342.
[13] *Íd.*, págs. 343-344.
[14] *Íd.*, págs. 345-347.
[15] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 10, líneas 22-24; pág. 11, líneas 2 y 12-15.
[16] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 12, líneas 9-11.

(10) ocasiones.[17] Afirmó que el señor **EMILIANO PAGÁN PÉREZ** lo contactó para presentarle una situación particular que tenía con su propiedad referente con una colindancia con uno de los solares, fue a ver las propiedades para físicamente ver cuál era el problema que estaba ocurriendo.[18] Le hizo una propuesta al señor **EMILIANO PAGÁN PÉREZ** quien lo aceptó y le requirió entregar algún plano de las propiedades, copia de escrituras, información del CRIM y luego midió para tener la data de campo para corroborar y pudo corroborar como correcta la información ofrecida y levantó un plano de mensura de los dos (2) terrenos envueltos en el problema.[19] Aseveró que le clamó al señor **EMILIANO PAGÁN PÉREZ** la copia de las escrituras y éste le ofreció el plano preparado por el ingeniero José Hernández que fue el original que dio vida a los dos (2) solares; la Resolución de ARPe; buscó la información del Registro de la Propiedad mediante dos (2) solicitudes de estudios de título y de la información que se le ofreció corroboro que esta correcta.[20] En su plano de mensura, se ilustran los dos (2) solares, sus verjas existentes y la problemática de las colindancias.[21] Especificó que la línea trazada en azul ilustra el plano del ingeniero José Hernandez y la entrecortada negra es la línea de la colindancia entre el solar Área 1 y Área 2.[22] Dilucidó que entre la línea negra entrecortada hay un piso de hormigón que aparentemente había alguna estructura allí construida en algún momento y está el pozo séptico así como hay una verja construida.[23] Está construida en tubo de verja y "cyclone fence".[24] Rindió un informe de trabajo con fecha de 7 de octubre de 2023 que tiene su sello y su firma. Su conclusión es que la línea negra entrecortada donde existe una verja de "cyclone fence" está mal construida. No está construida conforme a como legalmente se describen los solares. Debió construirse la verja por la línea azul.[25] También redactó un informe de trabajo de fecha 12 de enero de 2024 que tiene su sello y su firma.[26] En este documento corroboró la línea de colindancia existente para el año 2010 y pudo constatar que para esa fecha la verja no existía.[27] Razonó que la verja está construida no está en la ubicación correcta como se define legalmente en los solares y está ocupando terreno del señor **EMILIANO PAGÁN PÉREZ**.[28]

Durante el contrainterrogatorio, advirtió que la colindancia en el plano del ingeniero Hernández está correcta y no está el pozo séptico.[29] En el plano del ingeniero Hernández no se ve el pozo séptico y no se puede decir si el mismo está en la propiedad del señor **EMILIANO PAGÁN PÉREZ** o de la señora **EDLYN PAGÁN OTERO**.[30] Señaló que piensa que si en la propiedad de la señora **EDLYN**

---

[17] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 13, líneas 1-12.

[18] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 14, líneas 5-12; y 17-20.

[19] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 15, líneas 3-18 y 24-25; y pág. 16, líneas 1-4.

[20] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 16, líneas 14-24.

[21] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 17, líneas 9-14. Se admitió como Exhibit 1 del señor **EMILIANO PAGÁN PÉREZ**.

[22] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 21, líneas 3-8 y 11-16.

[23] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 22, líneas 15-18 y 23.

[24] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 23, líneas 2-3.

[25] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 24, líneas 1-2; 4; 7-9; y 23-25; en la pág. 25, líneas 1-2 y 6. Se admitió como Exhibit 2 del señor **EMILIANO PAGÁN PÉREZ**.

[26] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 26, líneas 22-22. Se admitió como Exhibit 3 del señor **EMILIANO PAGÁN PÉREZ**.

[27] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 27, líneas 15-20; y en la pág. 28, líneas 1-4.

[28] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 32, líneas 16-19.

[29] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 37, líneas 3-7; 10 y 15.

[30] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 42, línea 9.

**PAGÁN OTERO** se puede hacer un pozo séptico en el espacio que queda en su solar.

### Testimonio de la señora Aracelis Jiménez Ortiz

Declaró estar casada desde 1986 con el señor **EMILIANO PAGÁN PÉREZ** y contar con 73 años.[31] Ha residido en el Barrio Perchas en Morovis por aproximadamente 36 años.[32] Enunció que la casa en que residen se construyó en el 1995.[33] Era una residencia de plataforma en cemento y la estructura en madera.[34] Luego del huracán decidieron hacerla en cemento.[35] La vivienda está ubicada en un terreno [segregado] de su suegra y de la familia del señor **EMILIANO PAGÁN PÉREZ**.[36] Su suegra, Rosa Pérez, falleció en el 1996 y en el 1999 comenzaron a hacer las declaraciones juradas; se midieron los solares y el terreno se segregó para los tres (3) herederos así como las medidas fueron tomadas por el ingeniero Hernández.[37] Los tres (3) hermanos contrataron al licenciado Pedro Rubero para atender los asuntos legales.[38] Atestiguó que cuando el ingeniero Hernández fue a tomar las medidas, las viviendas ya estaban construidas y este les explicó que las medidas se tomarían de acuerdo a las construcciones de las casas, y los espacios no quedarían con la misma cabida a lo cual los hermanos estuvieron contestes.[39] Refrendó que al momento de la medición [segregación], el pozo séptico no estuvo en controversia y no se mencionó.[40] Asintió que el ingeniero Hernández les informó a los hermanos **PAGÁN PÉREZ** que las cabidas no iban a quedar de la misma medida y recomendó que fueran ante el licenciado Pedro Rubero para redactar unas declaraciones juradas que estaban de acuerdo con los pedazos de terrenos que le iban a tocar.[41] Para los años 2000, 2001 y 2002 en la residencia que le pertenece a la señora **EDLYN PAGÁN OTERO** vivían los señores Eduardo Pagán y Lydia Otero junto a su hermano Emmanuel.[42] El señor Eduardo Pagán vivió allí hasta el 2014 cuando falleció.[43] Acentuó que el señor Eduardo Pagán les exteriorizó jocosamente que "ustedes tienen suerte que tienen dos pozos sépticos en su terreno", se mantuvo así y nunca hubo una discusión ni alegación del pozo séptico.[44] Tampoco le hizo reclamación con relación al pozo séptico.[45] El señor **EMILIANO PAGÁN PÉREZ** nunca le mencionó que la colindancia era desde un palo de aguacate hasta un

---

[31] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 48, líneas 13; 15; 18 y -23.

[32] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 48, líneas 20, y pág. 49, líneas 4.

[33] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 49, línea 11.

[34] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 49, líneas 15-16.

[35] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 49, líneas 22-25.

[36] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 50, líneas 5-7.

[37] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 50, líneas 9; 12-14; y en la pág. 51, líneas 9-10 y 21.

[38] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 52, líneas 15-17 y 24-25; en la pág. 53, líneas 3 y 5-6.

[39] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 53, líneas 14-19 y 21.

[40] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 54, líneas 20-22 y 24-25.

[41] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 55, líneas 4-9.

[42] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 55, línea 22 hasta la pág. 56, línea 11.

[43] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 56, líneas 15 y 17.

[44] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 56, línea 21 hasta pág. 57, línea 1.

[45] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 57, línea 5.

palo de tulipán africano (conocido como meaíto).[46] Acotó que cuando originalmente se hicieron las propiedades no había ninguna verja entre las dos (2) casas. Por primera vez se hizo una verja en el 2005 porque habían adquirido un perro grande y había que mantenerlo "encorraladito" para que no se saliera; y era superficial.[47] Precisó que una vez fallece el señor Eduardo Pagán, continuó viviendo la casa la señora Lydia Otero.[48] La señora EDLYN PAGÁN OTERO iba y venía porque era la casa de sus padres.[49] Declaró que en noviembre de 2015, se trasladaron al estado de Indiana por motivos de su salud. Antes de irse, la señora EDLYN PAGÁN OTERO y el señor Minelson Medina Ríos no le hablaron con relación a la verja o colindancia.[50] Pormenorizó que recibieron una llamada de la señora EDLYN PAGÁN OTERO en la cual esta les dijo que iba hacer una verja en la propiedad y se le dijeron que siempre y cuando se hiciera acorde con los puntos establecidos en el plano.[51] La señora EDLYN PAGÁN OTERO contestó que lo va hacer por donde su padre le dijo eran los puntos; y nunca recibieron carta sobre la verja y la colindancia. Cuando llegaron a Puerto Rico, en mayo 2016, se había colocado la verja de concreto y ["cylone fence"] muy pegada e invadiendo su terreno.[52] El señor EMILIANO PAGÁN PÉREZ acudió a hablar con la señora EDLYN PAGÁN OTERO para notificarle que la verja no estaba en los puntos establecidos, pero no se llegó a ningún acuerdo.[53] La señora EDLYN PAGÁN OTERO dijo que no que era por donde su padre le dijo y no por donde estaban los puntos, no presentó documento alguno para sostener su punto, y se le comunicó que se contrataría un ingeniero para rectificar los puntos a lo cual se opuso la señora EDLYN PAGÁN OTERO.[54] Concretó que para ellos la verja construida en el 2016 por la señora EDLYN PAGÁN OTERO no esta en la colindancia; y su petitorio es que se rectifiquen los puntos para saber si tienen o no la razón.[55]

En el contrainterrogatorio, particularizó que cuando se realizó la mensura de la propiedad no se hizo mención del pozo séptico y no había nada erigido sobre el mismo.[56] Luego se hizo un pequeño "bohito", un pequeño techo, que fue construido por el señor Eduardo Pagán.[57] Reafirmó que cuando se hizo el pozo séptico quedaba en su propiedad y no en el terreno de la señora EDLYN PAGÁN OTERO.**[58]**

### Testimonio del señor Emiliano Pagán Pérez

Relató que, en el 1999, sus hermanos Catalina Pagán y Eduardo Pagán decidieron segregar los lotes.[59] Decidieron hacer un affidavit conteniendo el

---

[46] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 58, línea 3.
[47] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 58, líneas 19-20; y 25 hasta la página 59, línea 4.
[48] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 59, línea 15.
[49] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 59, líneas 21-22.
[50] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 60, líneas 1-3; 11, 15 y 20.
[51] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 61, líneas 4-8 y 18-22.
[52] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 62, líneas 1-2; 12-13; 17-19; 22 y 24.
[53] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 63, líneas 22-25 y en la pág. 64, línea 1.
[54] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 64, líneas 13; y 22-25.
[55] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 70, líneas 2 y 5-11.
[56] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 71, líneas 19 y 23.
[57] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 72, líneas 2; 7-8; 11 y 13.
[58] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 74, líneas 13-14.
[59] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 82, líneas 15; 18 y 20.

acuerdo de los tres (3). Cada uno firmó una declaración jurada.[60] Reseñó que tiene mucha diferencia la verja construida en el 2005 y la edificada en el 2016. La primera estaba derecha y la segunda la viraron. En ningún momento, su hermano Eduardo le dijo que la verja iba desde un palo de aguacate hasta uno de tulipán africano; el pozo muro le perteneciera o hubo problema alguno con el pozo séptico.[61] En el 2005, la señora **EDLYN PAGÁN OTERO** le regaló un perro a su hermano y este le pidió permiso para hacer una verja superficial para que no se saliera.[62] Reiteró que el pozo séptico está en su propiedad. Ponderó que no quiere romper el pozo séptico y la señora **EDLYN PAGÁN OTERO** puede usarlo para que no tenga que hacer uno.[63] Suplicó que la verja fabricada en el 2016 sea conforme a los puntos.[64]

En el transcurso del contrainterrogatorio, elucidó que sus hermanos y el estaban de acuerdo en que el ingeniero iba fijar los puntos (colocó unas varillas).[65] Afianzó que el pozo séptico está dentro de su propiedad.[66] Examinó el plano original que se utilizó para situar las colindancias e indicó que no se identifica el pozo séptico; y la línea que divide las dos (2) propiedades está más cerca de su residencia que la de Eduardo Pagán.[67]

### Testimonio de la señora Edlyn Pagán Otero

Informó que se dedica a contable, reside en Trujillo Alto desde el 2004 y residió en la propiedad en controversia desde 1994 hasta el 2000.[68] El 5 de mayo de 2001, adquirió la propiedad mediante escritura y previo a ello no realizó plano de segregación. Alegó que el señor Eduardo Pagán, su padre, le informó que los puntos iban desde el árbol de aguacate hasta el árbol de tulipán africano en forma recta.[69] Le comentó, además, que el pozo séptico estaba en su terreno. Sobre el mismo, el señor Eduardo Pagán construyó una casita de madera en la cual tenía sus herramientas y un baño.[70] La verja de 2005 se construyó porque a raíz de la muerte de su hermano, le regaló una German Shepard a sus padres y la casita se colocó en el piso de cemento.[71] Arguyó que dicha valla estaba en forma de "V" y no tiene diferencia con la construida en el 2015 excepto el material de construcción.

En el curso del contrainterrogatorio, la señora Edlyn Pagán Otero confirmó que según el plano de segregación la colindancia es en línea recta no una "V".[72] Avaló que cuando tiró el cordón no se dejó guiar por el plano de segregación; decidieron hacer la valla sin buscar el mencionado plano; no cotejaron los puntos de colindancia; al tirar la cinta esta rozaba la estructura del señor **EMILIANO PAGÁN PÉREZ;** no consultaron ni le dieron al ingeniero que leyera

---

[60] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 83, líneas 21-25; en la pág. 85, líneas 5-7; 10; 12; y 15.

[61] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 86, líneas 1-2; 4-6; 14; 21 y 25.

[62] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 87, líneas 4-7; y 9.

[63] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 87, líneas 13; y 16-20.

[64] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 87, líneas 23-24.

[65] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 90, línea 13; en la pág. 94, líneas 7-9; 11-12 y 15.

[66] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 99, línea 18.

[67] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 111, línea 12; en la pág. 112, línea 10.

[68] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 114, líneas 4; 8; 11 y 18-19.

[69] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 115, líneas 13; 17; y 23-25.

[70] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 116, líneas 4-5; 17; y 22-25.

[71] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 118, líneas 7; y 11-14.

[72] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 147, líneas 8; y 10.

el plano; y ello fue una decisión de ellos.[73] Ratificó que reconstruyeron la cerca a pesar del señor EMILIANO PAGÁN PÉREZ y su esposa estar fuera de Puerto Rico; almacenaron los materiales y bloques en la propiedad del señor EMILIANO PAGÁN PÉREZ y transitaron por el inmueble sin haber pedido permiso.[74] Desplegó que en su deposición no había mencionado la situación de salud de su madre.[75]

### Testimonio del señor Minelson Medina Ríos

Narró tiene una relación de pareja con la señora Edlyn Pagán Otero desde diciembre de 2013 y ha visitado la propiedad objeto de la controversia.[76] Reveló que la verja no estaba construida en línea recta sino en "V".[77] Aportó que cuando visitó por primera vez había una verja en el predio y el pozo séptico está en la propiedad de la señora Edlyn Pagán Otero.[78] Tenían interés en hacer o reconstruir el cercado porque estaba en mal estado y para saber hasta donde podían expandir para hacer un baño para doña Lydia Otero.[79] Examinaron el plano de segregación y observaron una línea de una forma caso equidistante entre las dos (2) propiedades, un poco mas pegada a la casa del señor EMILIANO PAGÁN PÉREZ pero en una línea perfectamente recta.[80] Piensa que está mal el señor EMILIANO PAGÁN PÉREZ o el plano de segregación.[81] No pudo localizar el pozo séptico en el plano de segregación.[82]

A lo largo del contrainterrogatorio, mencionó que en su deposición no habló del cuarto de baño ni habían tomado en consideración el plano de segregación.[83] No consultaron con un ingeniero.[84]

En vista de esto, el 12 de junio de 2024, los señores PAGÁN OTERO y PAGÁN PÉREZ presentaron su *Memorando de Derecho*, respectivamente.[85]

Después, el 20 de agosto de 2024, se dictaminó la *Sentencia* apelada.

En desacuerdo, el 5 de septiembre de 2024, la señora PAGÁN OTERO presentó una *Moción en Solicitud de Enmiendas y Determinaciones de Hechos Adicionales y en Solicitud de Reconsideración de Sentencia*.[86] A los pocos días,

---

[73] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 149, líneas 9; 13; y 22; en la pág. 150, líneas 1; 21; y 24; y en la pág. 151, líneas 2; y 4.
[74] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 154, líneas 6; 10; 14; y 19.
[75] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 157, líneas 8; y 12.
[76] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 163, líneas 15; 20; y 24.
[77] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 165, líneas 3; 5-6; y 8.
[78] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 164, línea 16; en la pág. 165, línea 24.
[79] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 166, líneas 8-19.
[80] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 166, línea 23 hasta la pág. 167, línea 15.
[81] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 171, líneas 20-23.
[82] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 173, línea 5.
[83] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 186, líneas 6; y 10; en la pág. 187, líneas 3.
[84] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en la pág. 190, línea 7.
[85] Apéndice de la *Apelación Civil*, págs. 348-360 y 361-377.
[86] *Íd.*, págs. 9-26.

el 8 de septiembre de 2024, se declaró no ha lugar la petición de reconsideración.[87]

Inconforme, el 7 de octubre de 2024, la señora **PAGÁN OTERO** acudió ante este foro intermedio revisor mediante *Apelación Civil* señalando el(los) siguiente(s) error(es):

> Erró el TPI al determinar que el área de terreno donde enclava el pozo séptico que sirve a la Sra. Pagán pertenece a la propiedad de Emiliano, por lo que la verja recientemente construida se aparta de los límites de los terrenos.

> Erró el TPI al determinar que los hermanos Eduardo, Emiliano y Catalina estuvieron de acuerdo con la segregación de la finca principal amparándose en que todos suscribieron una declaración jurada haciendo constar su conformidad con la segregación, toda vez que dichas declaraciones no fueron admitidas como evidencia.

> Erró el TPI al declarar Con Lugar la Demanda concediendo la reivindicación a la parte demandante de un predio de terreno del cual nunca había tenido posesión.

> Erró el TPI al indicar que Edlyn Pagán continuará utilizando el pozo séptico que ubica en el solar perteneciente a la parte demandante, sin indicar en qué concepto ésta lo continuará utilizando.

El 9 de octubre de 2024, pronunciamos una *Resolución* en la cual se concedió un término perentorio de treinta (30) días para presentar alegato en oposición al señor **PAGÁN PÉREZ**. El 8 de noviembre de 2024, el señor **PAGÁN PÉREZ** presentó su *Alegato de la Parte Apelada*.

Evaluado concienzudamente el expediente del caso, habiéndole dado la debida consideración a la transcripción de la prueba oral (TPO) y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A – *APRECIACIÓN DE LA PRUEBA*

La Regla 110 de Evidencia previene que "será el juzgador de hechos quien deberá evaluar la prueba presentada con el propósito de determinar

---

[87] *Íd.*, pág. 27.

cuáles hechos fueron establecidos o demostrados".[88] De ese modo, es norma reiterada que cuando se le interpela a un foro apelativo que revise determinaciones de hechos, la *apreciación de la prueba*, en primer lugar, le corresponde al tribunal sentenciador ya que estos tienen la oportunidad de observar y oír a los testigos, y por ello, están en mejor posición de evaluarla.[89] En ese sentido, la evaluación del foro sentenciador merece respeto y deferencia.[90]

Cónsono con ello, por lo general, "los tribunales apelativos no intervenimos ni alteramos innecesariamente las determinaciones de hechos que hayan formulado los tribunales de primera instancia luego de admitir y aquilatar la prueba presentada durante el juicio."[91] Es decir, no debemos descartar las determinaciones "tajantes y ponderadas del foro de instancia" y sustituirlas por nuestra propia apreciación, a base de un examen del expediente del caso.[92]

Aun así, la deferencia al juicio del juzgador de hechos "no es absolut[a]" pues "[u]na apreciación errónea de la prueba no tiene credenciales de inmunidad" frente a nuestra facultad revisora.[93] Los foros apelativos podremos intervenir con la *apreciación de la prueba* cuando exista error manifiesto, pasión, prejuicio, parcialidad o cuando un análisis integral, detallado y minucioso de la prueba así lo justifique.[94] Esto sin olvidar que "la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia significaría el caos y la destrucción del sistema judicial existente en nuestra jurisdicción".[95]

Respecto al prejuicio, pasión o parcialidad, existen si el juzgador "actúa movido por inclinaciones personales de tal intensidad que adopta

---

[88] 32 LPRA Ap. VI, R. 110.

[89] *Semidey et al. v. Fcia. Belmonte et al.*, 211 DPR 222 (2023); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 98-99 (2000); *López Vicil v. ITT Intermedia, Inc.*, 142 DPR 857, 865 (1997).

[90] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011).

[91] *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 65 (2009).

[92] *Íd.*, págs. 65-66.

[93] *Ramos Acosta v. Caparra Dairy, Inc.*, 113 DPR 357, 365 (1982); *Vda. de Morales v. De Jesús Toro*, 107 DPR 826, 829 (1978).

[94] *Pueblo v. García Colón I*, 182 DPR 129 (2011); *González Hernández v. González Hernández, supra*, pág. 777.

[95] *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018).

posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna".[96] En esa dirección, se consideran erróneas las conclusiones del tribunal apelado, si de un análisis de la totalidad de la prueba, el foro apelativo entiende que esta se distancia de la realidad fáctica o es inherentemente imposible o increíble.[97]

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio (*demeanor*) y escuchar su voz.[98] Así pues, los tribunales apelativos no intervendremos con la *apreciación de la prueba*, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o incurrió en error manifiesto.[99] Cuando la alegación es de pasión, prejuicio o parcialidad, los foros apelativos debemos verificar primordialmente si el juez de primera instancia cumplió su función de adjudicar de manera imparcial, pues solo así podremos descansar en sus determinaciones de hechos.[100]

De igual forma, el error manifiesto ocurre cuando, de un análisis de la totalidad de la evidencia, el foro revisor queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del Tribunal.[101] Este estándar de revisión restringe nuestra facultad para sustituir el criterio del tribunal primario a escenarios en que, de la prueba admitida, no exista base suficiente que apoye su determinación.[102] Resulta pertinente mencionar que, incluso, las diferencias de criterio jurídico no alcanzan ese

---

[96] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).
[97] *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002).
[98] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783 (2020).
[99] *Íd.*
[100] *Íd.*
[101] *Íd.*
[102] *Íd.*, pág. 795.

estándar.[103]

En cuanto a la prueba testifical, procede nuestra intervención con la *apreciación de la prueba* o la adjudicación de credibilidad de los testigos en aquellos casos en que, luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que conmueva nuestro sentido básico de justicia.[104] Por ello, quien impugne una sentencia o resolución bajo estos parámetros deberá presentar evidencia sustancial que derrote la presunción de corrección que cobija la decisión del foro primario. Esto es, evidencia que en una mente razonable pueda aceptarse como adecuada para sostener una conclusión.[105]

Ahora bien, esta norma de deferencia no alcanza a la *apreciación de la prueba* documental o pericial realizada por el foro de primera instancia. En este contexto, la jurisprudencia del Tribunal Supremo ha sido consistente en que los foros revisores nos encontramos en igualdad de condiciones con el foro sentenciador para evaluar y apreciar la prueba documental admitida en evidencia.[106] Además, nos encontramos facultados para adoptar nuestro criterio en la evaluación y *apreciación de la prueba* pericial, y hasta descartarla, aunque esta sea técnicamente correcta.[107]

### - B – *DESLINDE Y AMOJONAMIENTO*

Es derecho de todo propietario el proteger su predio; por lo cual, puede implorar que se fijen las colindancias correspondientes a su terreno.[108] Cuando los límites materiales de una finca están confundidos o inciertos, una acción de *deslinde* contribuye a clarificarlos.[109] Seguido a esto, mediante el proceso de *amojonamiento*, se fijan señales estables para marcar los límites deslindados.[110]

---

[103] *Íd.*
[104] *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986).
[105] *Vázquez Cintrón v. Banco Desarrollo*, 171 DPR 1, 25 (2007).
[106] *Albino v. Ángel Martínez, Inc.*, 171 DPR 457, 487 (2007); *Díaz García v. Aponte Aponte*, 125 DPR 1, 13-14 (1989).
[107] *González Hernández v. González Hernández, supra*, pág. 777.
[108] 31 LPRA § 8131.
[109] 31 LPRA § 8132-8133 y 9497; *Zalduondo v. Méndez*, 74 DPR 637, 641-642 (1953); *Zayas v. Autoridad de Tierras*, 73 DPR 897, 901 (1952).
[110] 31 LPRA § 8132.

La confusión de los linderos de las propiedades limítrofes se puede dar por causas naturales, accidentes o actos voluntarios.[111] Independientemente del origen, el titular de cualquiera de estas fincas, con citación de los dueños de los predios colindantes, puede entablar una acción de *deslinde* y *amojonamiento* en cualquier momento, dado a que estas son imprescriptibles.[112]

Nuestro Código Civil de 2020 describe el procedimiento de la acción de *deslinde* como sigue:

> El deslinde puede efectuarse por cualquier procedimiento técnico de agrimensura, con citación de los propietarios colindantes. Estos últimos deben presentarse, por sí mismos o por medio de representantes, en el lugar, el día y la hora señalados, con los títulos suficientes de propiedad que amparen su derecho.
> A falta de títulos suficientes, el deslinde puede efectuarse por lo que resulta de la posesión en que estén los colindantes. Para los efectos de este artículo, constituye título suficiente aquel que provea, de forma adecuada, la cabida de la finca y los restantes datos necesarios para su deslinde y amojonamiento.[113]

Es imperativo descollar que la sentencia dictada en un pleito de *deslinde* ni da ni quita derechos.[114] Esto se debe a que "deja intactas las cuestiones de posesión y propiedad" y solo tiene el propósito de aclarar los límites de los terrenos y evitar confusión futura.[115] Así, para pleitear cuestiones de titularidad o posesión, se debe instar una acción de naturaleza distinta al *deslinde*.[116]

La demanda de *deslinde* deberá contener: (1) la descripción de la propiedad; (2) el interés que tiene el reclamante sobre ella; (3) el nombre del poseedor de la propiedad; (4) la razón de la solicitud del *deslinde*; y (5) el requerimiento realizado a la otra parte con la negativa de esta.[117]

---

[111] *Arce v. Díaz*, 77 DPR 624, 627-628 (1954); *Zayas v. Autoridad de Tierras, supra*, pág. 901.
[112] 31 LPRA § 8134; *Ramírez Quiñones v. Soto Padilla*, 168 DPR 142, 158 (2006).
[113] 31 LPRA § 8135.
[114] *Zayas v. Autoridad de Tierras, supra*, pág. 901, citando a *La O v. Rodríguez*, 28 DPR 636, 638 (1920).
[115] *La O v. Rodríguez, supra*, pág. 638; *Jiménez Arocho v. Moca*, 70 DPR 517, 523 (1949). Véase *Ramírez Quiñones v. Soto Padilla, supra*, pág. 159, donde se implanta que: "el deslinde pretende individualizar los inmuebles, **sin determinar, directamente, quién es su dueño**. En esta acción, no se discute la validez ni la eficacia de los títulos, sino que se dirime su *interpretación*". (Énfasis suplido).
[116] La acción de la reivindicación, por ejemplo, puede acumularse con una causa de acción sobre deslinde y amojonamiento.
[117] *Zalduondo v. Méndez, supra*, pág. 641.

Si los títulos de los propietarios no precisan apropiadamente los límites, se debe resolver por la posesión u otro medio de prueba.[118] Si esto último tampoco es posible, se realizará mediante la distribución por partes iguales.[119]

### - C – *ACCIÓN REIVINDICATORIA*

Nuestro Código Civil de 2020 define la *propiedad* como "el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquier otra".[120] Esta "concede el derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas en las leyes" y "el propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla".[121] Cuando este derecho recae sobre una cosa, se conoce comúnmente como el *dominio*.[122] Es meritorio recalcar que existe una presunción de que la propiedad está libre de cargas, gravámenes o limitaciones, pero esta es rebatible mediante prueba que demuestre lo contrario.[123]

El propietario de un bien, al ostentar las facultades de goce y exclusión a su favor sobre este objeto, está dotado de unas prerrogativas procesales para hacerlas efectivas. Estas prerrogativas se conocen en nuestro derecho civilista como las acciones protectoras del *dominio*.

Entre las acciones protectorias del *dominio* yace la figura de la *acción reivindicatoria* de la *propiedad*. La *acción reivindicatoria* es aquella que un propietario insta para recuperar la posesión de una persona que no tenga derecho que la justifique.[124] Los requisitos para incoar este recurso son: "(a) el justo título de propiedad del demandante; (b) que la acción se dirija contra quien tiene la cosa en su poder; (c) falta de título del poseedor no propietario que permita seguir en la posesión; y (d) la identificación precisa de la cosa

---

[118] *Ramírez Quiñones v. Soto Padilla, supra*, pág. 164; 31 LPRA sec. 8136.
[119] 31 LPRA § 8136.
[120] *Íd.*, §7951.
[121] *Íd.*
[122] *Íd.*
[123] *Íd.*, § 7952.
[124] *Íd.*, § 8101; véase J. Puig Brutau, *Fundamentos de Derecho Civil*, 4.ta ed., Barcelona, Ed. Bosch, 1994, T. III, Vol. 1, pág. 162.

cuya restitución se solicita".[125] Probados de modo concurrente todos los elementos necesarios, la *acción reivindicatoria* sobre bienes inmuebles será una próspera.

Para que el propietario que presenta la *acción reivindicatoria* salga airoso, debe basarse "en la fuerza probatoria de [su] [título] y no en la debilidad del título de la parte demandada".[126] Además, debe identificar con suficiencia la identidad del inmueble que se desea recuperar.[127] El estándar evidenciario que ha de utilizarse en estos casos es el de prueba robusta y convincente.[128]

### - D – *DERECHO DE USO*

Los derechos reales abarcan los derechos posesorios o a la utilización de una cosa. En principio, nuestro Código Civil de 2020 tipifica el *derecho de uso* como:

> [L]a facultad de utilizar una cosa ajena para obtener directamente de ella cuantos servicios pueda rendir y, si es fructífera, percibir los frutos naturales o industriales en la medida que establezca el título constitutivo o, en su defecto, según las necesidades de su titular y de las personas que conviven con él.[129]

Este *derecho de uso*, como uno de carácter real con eficacia *erga omnes*, constituye una carga que afecta la propiedad del titular.[130] Así, este puede constituirse a favor de personas naturales o jurídicas; se presume vitalicio para el primer caso y no puede exceder treinta (30) años en el segundo.[131]

Esta facultad puede extenderse sobre una vivienda y se presume que, al menos que el título constitutivo disponga lo contrario:

> (a) el uso de una vivienda se extiende a su totalidad y comprende el de las dependencias y los derechos anexos, y (b) el titular del derecho puede utilizarla para el establecimiento de su profesión, industria o comercio, si es compatible con el uso a que la cosa está destinada.[132]

---

[125] 31 LPRA § 8102; véase *Castrillo v. Maldonado*, 95 DPR 885, 891 (1968).

[126] *Castrillo v. Maldonado, supra*, pág. 891; *Sucn. Meléndez v, Almodóvar*, 70 DPR 527, 532 (1949).

[127] *Castrillo v. Maldonado, supra*, pág. 892, citando a *Meléndez v. Almodóvar, supra*, pág. 532; *Pérez Cruz v. Fernández*, 101 DPR 365, 374 (1973).

[128] *Sucn. Arce v. Sierra*, 70 DPR 841, 845 (1950).

[129] 31 LPRA § 8481.

[130] *In re Márquez Colón*, 198 DPR 509, 524 (2017).

[131] 31 LPRA § 8462 y 8482.

[132] *Íd.*, § 8483.

Específicamente, el *derecho de uso* es personalísimo y se puede constituir por: (a) hechos o circunstancias previstas en ley; (b) negocio jurídico unilateral o bilateral *inter vivos*, gratuito o *mortis causa*; o (c) usucapión.[133] Asimismo, este puede favorecer a una o varias personas, sea simultánea o sucesivamente hasta la muerte del titular terminante; en el último escenario, los usuarios deben estar vivos al momento de la constitución.[134]

También, el usuario responderá por los daños ocasionados por su negligencia, los defectos en reparaciones ordinarias u omisión del deber de custodia; sin embargo, no será responsable por la disminución del valor económico debido al deterioro por el uso simple y ordinario.[135] Similarmente, "[s]i el usuario percibe todos los frutos de la cosa ajena, queda obligado a las reparaciones y los gastos ordinarios de conservación y al pago de contribuciones, del mismo modo que el usufructuario; en caso diverso, contribuye en proporción a los frutos que percibe".[136]

Por último, el *derecho de uso* se extingue:

(a) por la muerte del usuario o del habitacionista; (b) por el cumplimiento del plazo o de la condición resolutoria consignada en el título constitutivo; (c) por la consolidación del derecho de uso o de habitación y la propiedad en una misma persona; (d) por la renuncia del usuario o habitacionista; (e) por la pérdida total de la cosa objeto del uso o habitación; (f) por la resolución del derecho del constituyente; (g) por la falta de cumplimiento de condiciones impuestas o pactadas libremente; (h) por la expropiación de la cosa objeto del uso o habitación; (i) por usucapión; (j) por resolución judicial, en caso de ejercicio gravemente contrario a la naturaleza del bien; (k) por el mal uso según lo dispuesto en el artículo 917 de este Código; o (l) por la inhabitabilidad sobrevenida.[137]

- III -

En este caso, la señora **PAGÁN OTERO** apuntaló que el tribunal se equivocó: (i) al determinar que el área de terreno donde enclava el pozo séptico que sirve a la señora **PAGÁN OTERO** pertenece a la propiedad del señor **PAGÁN**

---

[133] *Íd.*, § 8461.
[134] *Íd.*, § 8463.
[135] *Íd.*, § 8466.
[136] *Íd.*, § 8484.
[137] *Íd.*, § 8467.

**PÉREZ**, por lo que la verja recientemente construida se aparta de los límites de los terrenos; (ii) al determinar que los hermanos Eduardo, Emiliano y Catalina estuvieron de acuerdo con la segregación de la finca principal amparándose en que todos suscribieron una *Declaración Jurada* haciendo constar su conformidad con la segregación, toda vez que dichas declaraciones no fueron admitidas como evidencia; (iii) al declarar con lugar la *Demanda* concediendo la reivindicación al señor **PAGÁN PÉREZ** de un predio de terreno del cual nunca había tenido posesión; y (iv) al indicar que la señora **PAGÁN OTERO** continuará utilizando el pozo séptico que ubica en el solar perteneciente al señor **PAGÁN PÉREZ**, sin indicar en qué concepto ésta lo continuará utilizando.

Por otro lado, el señor **PAGÁN PÉREZ** adujo que el foro de instancia decidió correctamente al declarar ha lugar la *Demanda* encausada tras considerar la prueba vertida en el juicio. Además, sostuvo que el permiso para la segregación aprobado por la Administración de Reglamentos y Permisos (ARPe) no fue impugnado y, a su vez, goza de una presunción de corrección. Igualmente, enfatizó que se pasó prueba sobre el consentimiento de los hermanos **PAGÁN PÉREZ** para que se llevase a cabo la segregación; en concreto, se pasó prueba testifical sobre ello y se admitió como exhibit una de las declaraciones juradas, la del propio señor **PAGÁN PÉREZ**. Esbozó también que nunca hubo inconvenientes sobre el uso del pozo séptico entre él y el señor Eduardo Pagán Pérez, su hermano, y la verja construida en el 2005 fue con el propósito de contener a una mascota que le había regalado la señora **PAGÁN OTERO** al señor Eduardo Pagán Pérez y a su esposa, no para fijar los linderos entre las fincas contiguas.

Procederemos a discutir los errores según trazados por la señora **PAGÁN OTERO**. Al estudiar detalladamente la integridad de nuestro expediente judicial, incluyendo la transcripción de la prueba oral (TPO) del juicio en su fondo, es preciso señalar que no hallamos prueba o evidencia que sustente que el tribunal *a quo* haya actuado mediando error manifiesto o por pasión, prejuicio o parcialidad al determinar que procedía deslindar el predio

de terreno a favor del señor **PAGÁN PÉREZ**. Fundamentó su determinación en la inspección ocular y la prueba vertida en el juicio. El señor **PAGÁN PÉREZ** presentó los planos originales de la segregación junto con un plano elaborado por el ingeniero JOSÉ ALFONSO RAMOS RIVERA (ingeniero RAMOS RIVERA) quien testificó en el juicio que su plano, luego de realizar una mensura, era consistente con el plano original de la segregación, respetando así la cabida y los linderos de los lotes.

Según el plano admitido como *Exhibit* 1 durante el juicio y el testimonio pericial del ingeniero RAMOS RIVERA, el pozo séptico que sirve a la propiedad de la señora **PAGÁN OTERO** está ubicado en la finca del señor **PAGÁN PÉREZ**. Si escrutamos los planos admitidos en evidencia y las descripciones registrales originales de los lotes segregados, podemos divisar que las cabidas son consistentes entre sí. En lo pertinente, el plano preparado por el ingeniero RAMOS RIVERA ilustra cómo la verja construida por la señora **PAGÁN OTERO** se extralimita de los linderos originales; el propio perito hizo hincapié en el hecho de que la verja estaba mal construida y el pozo séptico se encuentra en la propiedad del señor **PAGÁN PÉREZ**.

No encontramos que el justiprecio concluido sobre que la verja construida por la señora **PAGÁN OTERO** se extralimita de los linderos y que la procedencia del deslinde a favor del señor **PAGÁN PÉREZ** haya sido un error o se basara en pasión, prejuicio o parcialidad del tribunal. Al contrario, este discernimiento descansa en el aquilatamiento de la prueba testifical, pericial y documental presentada y debidamente admitida en el juicio. No se cometió el primer error.

El segundo error versa sobre que no se comprobó que los hermanos **PAGÁN PÉREZ** estuvieran de acuerdo con la segregación efectuada será discutido brevemente. Ello debido a que, la *Declaración Jurada* del señor **PAGÁN PÉREZ** sobre el pacto entre los herederos fue admitida como *exhibit* y puesto que ni fue objetada durante el juicio ni se hizo oferta de prueba ni se

impugnó la validez de la segregación practicada en 2001.[138] Así, "nos adherimos a la norma vigente de que[,] en apelación, nos abstendremos de adjudicar cuestiones no planteadas en primera instancia".[139] En adición, es menester destacar que la prueba testimonial presentada por el señor **PAGÁN PÉREZ** durante el juicio, la cual consistía en su propio testimonio y el de la señora ARACELIS JIMÉNEZ ORTIZ, aludió a que los hermanos **PAGÁN PÉREZ** estaban conformes con la segregación realizada. No se incurrió en el segundo error.

En su tercer error, sostiene que el foro de instancia se equivocó al conceder la reivindicación a favor del señor **PAGÁN PÉREZ** sobre un terreno que nunca poseyó. En este caso, el señor **PAGÁN PÉREZ** cumplió con todos los requisitos de la acción reivindicatoria, según perfilados en nuestro ordenamiento. Primordialmente, el señor **PAGÁN PÉREZ** probó su justo título mediante la presentación de una copia de la escritura de *Segregación y Adjudicación de Herencia* durante los procedimientos del caso.[140] En esta, compareció el señor **PAGÁN PÉREZ** junto con sus hermanos doña Catalina y don Eduardo; los tres firmaron el instrumento público, de lo cual el notario dio fe, lo cual equivale a la prestación de su consentimiento y aquiescencia con lo convenido. En la escritura, el señor **PAGÁN PÉREZ** advino dueño exclusivo y en pleno dominio de la parcela que mide 760.865 m², según segregada de la finca principal quedando un remanente.

Por otra parte, la acción reivindicatoria se dirigió contra la señora **PAGÁN OTERO**, persona que tenía en su poder el pedazo de terreno disputado.

---

[138] Apéndice de la *Apelación Civil*, págs. 345-346 (*Minuta*). Transcripción de la Prueba Oral (**TPO**) de la audiencia celebrada el 13 de mayo de 2024, en las págs. 464-466.
Además, recalcamos que se incluyeron unos estudios de título realizados el 26 de septiembre de 2023 por la señora Doris D. Rodríguez, investigadora de títulos, junto con los informes elaborados por el ingeniero RAMOS RIVERA. Estos revelan que los respectivos lotes están inscritos a favor de la señora **PAGÁN OTERO** y el señor **PAGÁN PÉREZ** junto con las cabidas correspondientes a los planos presentados en evidencia. Quiérase decir, las cabidas de los lotes plasmadas en ambos planos eran consistentes con la realidad registral de aquel momento, por lo cual se les imputa conocimiento sobre los límites y la extensión de las fincas a ambos titulares registrales. Apéndice de la *Apelación Civil*, págs. 583-586.
[139] *Trabal Morales v. Ruiz Rodríguez*, 125 DPR 340, 351 (1990) (citando a *Sánchez v. Eastern Air Lines, Inc.*, 114 DPR 691 (1983)).
[140] Apéndice de la *Apelación Civil*, págs. 77-82.

Seguidamente, la señora **PAGÁN OTERO** no demostró tener un título posesorio que le permitiera continuar en disfrute del solar en controversia. Este Tribunal no encontró que se le haya provisto al foro recurrido suficiente evidencia para ratificar su tenencia de la porción del lote en pugna. La prueba presentada fue de naturaleza testifical y, en ella, la señora **PAGÁN OTERO** y su testigo, el señor MINELSON MEDINA RÍOS expresaron que don Eduardo les dijo que los linderos de su finca iban desde el árbol de aguacate hasta el árbol de tulipán africano.[141] Estos testimonios no representan un título posesorio suficiente en derecho para contrarrestar la acción reivindicatoria.

En último lugar, el señor **PAGÁN PÉREZ** identificó precisamente la porción de terreno que se deseaba reivindicar mediante prueba pericial y documental. Específicamente, el plano preparado por el ingeniero RAMOS RIVERA plasma que la verja construida por la señora **PAGÁN OTERO** ocupa su terreno por 86.348 m². De la misma manera, el *Informe de Trabajo* preparado el 7 de octubre de 2023 por el ingeniero RAMOS RIVERA delimita que, de acuerdo con la mensura practicada, la finca de la señora **PAGÁN OTERO** tiene un exceso de cabida de la inscrita de 86.348 m², validando así el plano de segregación original preparado por el ingeniero JOSÉ A. HERNÁNDEZ COLÓN.[142] Por ende, aquí no hay un título posesorio que justifique la ocupación de parte del terreno por la señora **PAGÁN OTERO**.[143] No se incidió en el tercer error.

En su cuarto error, aclamó que el foro de instancia erró al advertir que esta seguiría utilizando el pozo séptico en el solar del señor **PAGÁN PÉREZ** sin pormenorizar en qué concepto haría uso de ello. Discernimos que no era necesario que se hiciera esta aclaración, pero disipamos esta interrogante de la señora **PAGÁN OTERO** a continuación.

---

[141] Esto a pesar de que en el plano de segregación original plasmaba otra cosa. La señora **PAGÁN OTERO** expresó que no examinaron plano alguno para la construcción de su verja. Apéndice de la *Apelación Civil*, pág. 530. Contrario a esto, el señor Medina Ríos expresó que sí vieron el plano de segregación original. Apéndice de la *Apelación Civil*, pág. 553.

[142] Apéndice de la *Apelación Civil*, págs. 578-580.

[143] Es imperativo subrayar que la señora **PAGÁN OTERO** *no* posee actualmente el predio ocupado debido a que **no** reside en la finca colindante con la del señor **PAGÁN PÉREZ**. En el juicio, detalló que desde 2004 vive en Trujillo Alto. Apéndice de la *Apelación Civil*, pág. 495.

La facultad que el señor **PAGÁN PÉREZ** le concedió a la señora **PAGÁN OTERO** en el juicio y según impuesto en la *Sentencia*, es un ***derecho de uso sobre el pozo séptico***. Este derecho se limita a la utilización y el mantenimiento del pozo séptico que sirve a la finca de la señora **PAGÁN OTERO** y *no* contempla las áreas aledañas al pozo, según puntualizado en la *Sentencia* invocada. En otras palabras, la señora **PAGÁN OTERO** podrá utilizar el pozo séptico localizado en la propiedad del señor **PAGÁN PÉREZ** conforme a sus necesidades. No se infringió en el cuarto error.

- IV -

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia* concretada el 20 de agosto de 2024 por el Tribunal de Primera Instancia, Sala Superior de Ciales.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Las Juezas Cintrón Cintrón y Rivera Marchand concurren con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones