SUCESIÓN DE PETRONILA MELÉNDEZ COTIS, compuesta de sus hijos FRANCISCO COTIS y JUAN JORGE MELÉNDEZ, demandantes y apelados, *v.* JUAN ANTONIO ALMODÓVAR HORRACH, demandado y apelante.

Núm. 9944.—*Sometido:* Noviembre 7, 1949. *Resuelto:* Noviembre 17, 1949.

528

*Eusebio López Acosta* y *Gilberto López de Victoria,* abogados del apelante; *Enrique Báez García,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

La Sucesión de Petronila Meléndez Cotis, compuesta de sus hijos Francisco Cotis y Juan Jorge Meléndez, instó ante la Corte de Distrito de Mayagüez demanda de reivindicación y en cobro de productos contra Juan Antonio Almodóvar Horrach. Se alegó en ella en esencia que los componentes de la sucesión son hijos naturales de Petronilla Meléndez Cotis, quien falleció el 5 de agosto de 1929, sin haber otorgado testamento; que por haberla comprado a Ramón Almodóvar hacía 33 años, su causante era dueña de un predio de terreno compuesto de cinco cuerdas y media, describiéndolo; que esa finca ha sido agrupada con otras por el demandado, para formar un inmueble de 17 cuerdas; que a pesar de ser ellos los

dueños de la referida finca de 5.50 cuerdas, el demandado Juan Antonio Almodóvar tiene la posesión material de la misma desde la muerte de su causante, sin título alguno, de mala fe y contra la voluntad manifiesta de los demandantes. Como segunda causa de acción se reclamaron frutos por un valor de $4,676.

A la anterior demanda presentó el demandado excepciones previas(¹) de falta de hechos y de prescripción. También contestó negando las alegaciones esenciales de la misma, entre ellas la de que la finca en cuestión fuera adquirida por Petronila Meléndez por compra a Ramón Almodóvar, aunque admitiendo que lo cierto era que dicha finca fué donada a ésta por Francisco Poueymirou.

Trabada así la contienda, fué el pleito a juicio. La prueba de los demandantes tendió a demostrar que ellos son hijos naturales de Petronila Meléndez Cotis y que allá para el año 1903 ésta adquirió por compra a Ramón Almodóvar la finca de 5.50 cuerdas, identificándola; que años más tarde y de palabra la propiedad fué cedida por su señora madre al demandado Juan Antonio Almodóvar para que éste la trabajara en aparcería; que ellos vieron en distintas ocasiones a Almodóvar entregar a Petronila parte de los beneficios obtenidos; que su causante falleció en 5 de agosto de 1929 en una casa situada dentro de la aludida propiedad; que para aquel entonces Almodóvar continuaba trabajando la finca a medias; que Leonides Meléndez, hermana de crianza de ellos, aún continúa viviendo en la casa en que falleció Petronila; y que la finca en cuestión nunca fué vendida por su señora madre ni por ninguno de ellos al demandado, quien la posee sin título alguno y contra su voluntad.

La del demandado fué al efecto de que por documento privado él adquirió la finca de 5.50 cuerdas en cuestión de Petronila Meléndez, causante de los demandantes, hace más de 40

---

(¹)Las excepciones previas han sido abolidas. Regla 7(c) de las de Enjuiciamiento Civil.

años; que posteriormente la agrupó con otras finquitas de su propiedad, tramitando en diciembre de 1913 un expediente posesorio, el cual una vez aprobado por la Corte Municipal de San Germán se inscribió en el Registro de la Propiedad el 17 de enero de 1914; que cuatro días más tarde el demandado vendió esa propiedad a María Inés Almodóvar Horrach, hermana suya, quien no inscribió su escritura de adquisición hasta tres años más tarde y quien la poseyó hasta el año 1930, cuando el demandado la readquirió de ella por compra, tramitando poco después un expediente contradictorio de dominio a nombre propio, siendo éste aprobado por la corte inferior e inscrito en el Registro de la Propiedad el 21 de octubre de 1930; que desde que adquirió la finca de Petronila Meléndez él y su hermana la han poseído en concepto de dueños, continuando en tal posesión hasta el momento mismo del juicio; y que él nunca trabajó a medias la citada finca.

La corte inferior dictó sentencia declarando, entre otras cosas, que los demandantes son los únicos y legítimos dueños de la finca objeto del litigio; ordenando al demandado que devuelva la misma a aquéllos y condenándolo a pagar a los demandantes la suma de $1,692.50 por concepto de frutos, más las costas y $300 para honorarios de abogado. No conforme con la sentencia así dictada el demandado apeló. Alega en apoyo de su recurso que (1) la corte inferior erró al decretar que los demandantes, en su carácter de únicos y universales herederos de Petronila Meléndez Cotis, son los únicos y legítimos dueños de la porción de terreno de 5.50 cuerdas objeto de reivindicación, sin tomar en consideración las defensas planteadas por el demandado de falta de causa de acción y prescripción; (2) al no considerar la prueba documental debidamente inscrita, y especialmente el expediente posesorio inscrito en el Registro de la Propiedad desde el 17 de enero de 1914; y (3) al calcular los frutos producidos por la finca reivindicada en la suma de $1,692.50, sin base específica para fundar sus cálculos.

██ No hay duda de que los demandantes en su carácter de hijos naturales de Petronila Meléndez estaban plenamente autorizados para instar la demanda de reivindicación sin necesidad de tramitar previamente una declaratoria en que se les declarara únicos y universales herederos de su causante. Podían probar su carácter de herederos con prueba oral durante el curso del juicio. *Sucesión Torres Negrón* v. *Torres et al.*, 29 D.P.R. 909; *Sucesión Rodríguez* v. *Pérez*, 25 D.P.R. 78.

Ahora bien, en acciones reivindicatorias como la que nos ocupa, si los demandantes han de salir victoriosos deberán hacerlo basados en la fuerza probatoria de su título y no en la debilidad del título de la parte demandada. *Sosa* v. *Fidalgo*, 56 D.P.R. 50; *Santos* v. *Rodríguez*, 56 D.P.R. 260; *Pérez* v. *Rubert Hnos.*, 56 D.P.R. 636; *Gerardino* v. *Pueblo*, 55 D.P.R. 895; *Pueblo* v. *Rojas*, 53 D.P.R. 121; *Carreras* v. *Brunet*, 47 D.P.R. 443; *Elzaburu* v. *Chaves*, 19 D.P.R. 172. Deberán también identificar en debida forma la finca objeto del recurso. ¿Tuvo éxito en todo ello la sucesión demandante? Veamos:

██ De los autos surge que el demandado Juan Antonio Almodóvar tramitó ante la Corte Municipal de San Germán un expediente posesorio a su nombre en relación con una finca de 17 cuerdas, de la cual formaba parte, entre otras, la de 5.50 cuerdas aquí en disputa; que dicho expediente fué aprobado por la corte municipal en 26 de diciembre de 1913 y que copia certificada de la resolución aprobatoria del mismo fué inscrita, según ya hemos indicado, en el Registro de la Propiedad de San Germán el 17 de enero de 1914. Diremos, no obstante, que por disposición expresa de la ley el expediente así tramitado necesariamente tuvo que ser inscrito *sin perjuicio de tercero*. Artículo 392 de la Ley Hipotecaria. A esos fines el dueño de la propiedad no se considera tercero. La Ley Hipotecaria dispone, sin embargo, que "la inscripción de posesión no perjudicará al que tenga mejor derecho

a la propiedad del inmueble, aunque su título no haya sido inscrito, a menos que la prescripción haya convalidado y asegurado el derecho inscrito'', (art. 394) y que ''en cuanto al dueño legítimo del inmueble o derecho que se esté prescribiendo, se calificará el título y se contará el tiempo con arreglo a la legislación común.'' (Art. 35.) Véanse también *Martínez* v. *Municipio*, 64 D.P.R. 158, 169; *Polo et al.* v. *Fernández et al.*, 27 D.P.R. 979, 984; *Colón* v. *Rosario et al.*, 16 D.P.R. 774, 779; así como Morell, Legislación Hipotecaria, vols. 5 y 2, págs. 488 *et seq.* y 653 *et seq.*, respectivamente; y Barrachina, Derecho Hipotecario y Notarial, vol. 4, pág. 327. Por tanto, la tramitación e inscripción del expediente posesorio en nada podía afectar los derechos dominicales de los aquí demandantes, a menos que la prescripción hubiera convalidado y asegurado el derecho inscrito. En realidad, un expediente posesorio sólo tiende a demostrar el hecho oficial de la posesión, mas nunca el derecho a tal posesión. *Roble* v. *Pellot*, 44 D.P.R. 48; *Sucesión Maisonave* v. *Maisonave et al.*, 13 D.P.R. 262, 266; *Criado* v. *Battistini*, 3 D.P.R. 195, 204. Nada había pues, que impidiera una acción reivindicatoria tendiente a destruir tal posesión, a pesar de haberse inscrito la misma. En su virtud, la corte inferior, no obstante considerar la existencia de la inscripción de la posesión a favor del demandado, tenía derecho a concluir que no era cierto que el demandado hubiera estado en posesión de la finca, en concepto de dueño, desde 1913—fecha en que se tramitó el expediente posesorio—hasta 1929 en que murió la madre de los demandantes.

En lo que a posesión anterior a 1914 concierne, la corte sentenciadora también tenía derecho a no dar crédito a la prueba del demandado, al efecto de que por documento privado había adquirido la finca de 5.50 cuerdas de Petronila Meléndez, no sólo porque dicho documento no fué jamás presentado, a pesar de las promesas que a ese respecto hizo el demandado, sino porque estimó más digna de crédito la prueba

de los demandantes, tendiente a demostrar que el demandado había sido un aparcero de la madre de ellos y que ésta era la verdadera dueña de la finca.

Respecto al expediente de dominio, la corte a quo también estuvo acertada en su conclusión. La inscripción de tal expediente no es óbice para que otra persona que se considere dueña de la propiedad objeto del mismo inicie una acción reivindicatoria. En primer lugar, habiéndose inscrito la posesión de la finca en 1914 era innecesario acudir al procedimiento supletorio de información de dominio. *Collazo vda. Texidor v. Pueblo,* 46 D.P.R. 164, 170; *Bermúdez v. Morales,* 42 D.P.R. 426, 429. Y como posteriormente el demandado readquirió la propiedad de persona que en el registro aparecía con derecho para ello, fácil le hubiera sido lograr la inscripción de la escritura de compraventa. Bajo las circunstancias, lo apropiado hubiera sido que se inscribiera la escritura de adquisición del demandado y se solicitara por él la conversión de la inscripción de posesión en inscripción de dominio, a tenor de lo provisto por el artículo 441 del Reglamento para la Ejecución de la Ley Hipotecaria, según dicho artículo fué enmendado por la Ley núm. 21 de 7 de julio de 1923, pág. 217. Los autos guardan silencio respecto al motivo por el cual no se siguió el procedimiento más fácil, más económico y más rápido de la conversión. En segundo lugar, llama poderosamente la atención el hecho de que en su gran mayoría los nombres de las personas de quienes el demandado hubo las 17 cuerdas—de las cuales como se ha dicho forman parte las 5.50 cuerdas aquí en controversia—según se mencionan en el expediente posesorio, no coincidan con los de aquéllas de quienes el demandado adquirió las distintas parcelas según el expediente de dominio. Por ejemplo, en el expediente posesorio tramitado en 1913 se hace constar que las 5.50 cuerdas fueron adquiridas de Petronila Meléndez, mientras que en el expediente de dominio la misma parcela se describe como que consta de 5

cuerdas tres cuadros y se dice haber sido adquirida de Francisco Poueymirou. En relación con otras parcelas que también forman parte de la finca de 17 cuerdas cuyo dominio trataba de inscribirse, la discrepancia entre los nombres de las personas de quienes las mismas fueron adquiridas es por demás aparente. Si bien en los expedientes posesorios no se requiere la citación de los anteriores dueños y basta que se cite a los propietarios colindantes, en los expedientes de dominio es indispensable la citación de los anteriores dueños. Si según el expediente posesorio, y conforme testificó el propio demandado durante el juicio, las 5.50 cuerdas fueron adquiridas por él de Petronila Meléndez y no de Francisco Poueymirou, el hacerse constar en el expediente de dominio que dicha propiedad había sido adquirida de Poueymirou y no de la Meléndez es un error no sólo sospechoso sino craso, que conlleva la nulidad de dicho expediente, ya que los causahabientes de Petronila Meléndez aquí demandantes, no fueron jamás citados ni oídos en el expediente de dominio. *Rivero et al.* v. *Hernández,* 18 D.P.R. 1042; *Monge et al.* v. *Zechini,* 17 D.P.R. 759. Por otra parte, las disposiciones de la Ley Hipotecaria en lo atinente al informativo de dominio deben ser cumplidas estrictamente, y una desviación del procedimiento, especialmente cuando la misma es de la magnitud de la envuelta en el expediente tramitado por el demandado, produce su nulidad. *Febre* v. *Febre,* 40 D.P.R. 219; *Colón et al.* v. *Registrador,* 23 D.P.R. 754; *Ex parte Perrier* v. *Del Rosario,* 20 D.P.R. 128.

Es asimismo sospechoso que el demandado en vez de inscribir su escritura de adquisición y de acudir al procedimiento de conversión, se valiera de lo que se calificó de expediente contradictorio de dominio, puesto que como él adquirió de su hermana María Inés y ésta a su vez adquirió de él, al citarla en dicho expediente en su carácter de anterior dueña, él no hacía otra cosa a la larga que citarse a sí mismo e ignorar a los verdaderos dueños anteriores.

 Finalmente diremos que es incuestionable que tanto en la demanda como en la prueba aducida por las partes se identifican de manera indubitada tanto la finca de 5.50 cuerdas, como la de 17 cuerdas de que formaba parte, dándose así cumplimiento de manera taxativa a lo provisto por el artículo 125 del Código de Enjuiciamiento Civil. Véanse *Serrano* v. *Sucesión Santos,* 24 D.P.R. 175; *Morales* v. *Landráu,* 15 D.P.R. 782.

 Tomando en consideración las razones anteriormente expuestas, la corte inferior estuvo justificada en concluir que los demandantes habían demostrado tener un título superior al del demandado, no sólo porque a su juicio la prueba de aquéllos era más digna de crédito, si que también porque la testifical del demandado no le mereció crédito alguno y porque la documental de éste adolecía de defectos que la viciaban de nulidad y no podía tener el alcance que el demandado pretendía.

Aunque la corte a quo no resolvió específicamente las excepciones previas planteadas por el demandado, al dictar sentencia en la forma en que lo hizo implícitamente las declaró sin lugar. Al así hacerlo actuó correctamente, puesto que era claro que la demanda aducía hechos y que de su faz no se desprendía que la acción hubiera prescrito. Artículos 1857 y 1859 del Código Civil, ed. 1930. Además, cualesquiera defectos de que a este respecto pudiera adolecer la demanda fueron subsanados por la prueba. Regla 15(*b*).

Dadas las consideraciones precedentes, los dos primeros errores no han sido cometidos.

En lo que a los frutos respecta, la prueba sólo tendió a demostrar que la finca de 5.50 cuerdas estuvo todo el tiempo sembrada de caña de azúcar, tabaco y frutos menores, así como que según uno de los demandantes la misma producía de 18 a 20 toneladas y según el demandado de 8 a 10 toneladas de caña por cuerda. No hubo prueba, sin embargo, respecto a cuántas cuerdas estuvieron sembradas de caña de

azúcar, respecto a cuántas estuvieron sembradas de tabaco, ni respecto a cuántas estuvieron sembradas de frutos menores. Tampoco hubo prueba sobre los gastos incurridos anualmente en la siembra y cultivo de todos esos productos, ni sobre los beneficios netos obtenidos. Bajo estas circunstancias, la corte inferior erró al resolver que hubo prueba de que "esos terrenos produjeron un promedio de 45 toneladas de caña por año, o sea una producción total de 675 toneladas de caña en los 15 años," y que *"considerando que cada tonelada de caña produzca un ingreso neto de $2.50,* dichas 675 toneladas de caña produjeron la suma de $1,692.50, de cuya suma se benefició el demandado en perjuicio de los demandantes." (Bastardillas nuestras). *Arvelo* v. *Banco Territorial,* 29 D.P.R. 1066. *Cf. Capó* v. *A. Hartman & Cía.,* 57 D.P.R. 196; *Costas* v. *G. Llinás & Co.,* 66 D.P.R. 730, 746; *Morales v. Landráu,* supra. A los demandantes incumbía aducir prueba clara y convincente sobre este extremo y colocar a la corte en condiciones de adjudicar debidamente sus derechos. En ello no tuvieron éxito. Aunque las acciones de reivindicación y en reclamación de frutos son acumulables, el hecho de que prospere la primera no quiere necesariamente decir que deba prosperar la segunda, especialmente en ausencia de prueba para sostener esta última.

*La sentencia apelada debe ser modificada en el sentido de eliminar de la misma el pronunciamiento relativo a la concesión de frutos, y así modificada confirmada.*