ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **3 A´S INVESTMENT LLC**<br><br>Apelado<br><br>v.<br><br>**ALAMEDA HOLDINGS CORP.**<br><br>Apelante | TA2026AP00222 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil Núm.:<br>**MZ2020CV01279**<br><br>Sobre: Reivindicación, Deslinde y Amojonamiento |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2026.

Comparece ante nos Alameda Holdings Corp. (en adelante, Alameda o apelante) y solicita la revocación de la *Sentencia Nunc Pro Tunc* emitida el 10 de junio de 2025, pero enmendada el 27 de enero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, TPI).[1] Mediante la decisión aquí recurrida, el TPI declaró no ha lugar a la solicitud de sentencia sumaria instada por Alameda y ha lugar al petitorio sumario presentado por 3A's Investment LLC (en adelante, 3A's o apelado).

Por los fundamentos que expondremos a continuación, se revoca la *Sentencia Nunc Pro Tunc* apelada.

---

[1] A pesar de que el dictamen del foro primario incluye en su título la frase *nunc pro tunc*, la sentencia es una enmendada, debido a que la naturaleza de la modificación realizada ni es clerical ni de forma porque el tribunal incluyó por primera vez su parecer sobre la reconvención instada por Alameda en el segundo documento, lo cual incide sobre sus derechos sustantivos e interrumpe el término para acudir en apelación. *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1060, n. 41 (2020); véase R. 49.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 49.1.

**I.**

Surge del expediente que, el 16 de diciembre de 2020, el señor Roberto García Rivera (en adelante, señor García Rivera) incoó una *Demanda* sobre acción reivindicatoria, deslinde y amojonamiento contra Alameda. Alegó ser el titular de un inmueble localizado en Mayagüez en el cual se encontraba una vivienda habitada por sus padres. Arguyó que su propiedad colindaba con la finca de Alameda. Argumentó que los linderos entre las fincas estaban confundidos, lo cual vulneró su derecho propietario de uso y disfrute por la invasión parcial del terreno por parte de Alameda y al este último negarle el debido acceso. Para constatar los puntos de colindancia, contrató a un agrimensor que concluyó que la edificación de Alameda traspasó al terreno del señor García Rivera, pero adujo que Alameda se negó a reconocer ese plano o a efectuar su propia mensura. Además, razonó que las actuaciones de Alameda le causaron daños estimados en $15,000.00, por la restricción de su derecho propietario.

En respuesta a ello, el 1 de junio de 2021, Alameda presentó su *Contestación a [la] Demanda y Reconvención*. Alegó que la colindancia entre ellos era claramente visible y que surgía de los planos de segregación y de las escrituras, por lo cual no existía confusión entre los linderos. Arguyó que la demanda se instó de manera temeraria y con la intención de que Alameda renunciara a su territorio y accediera a la creación de una servidumbre de paso a favor de la finca del señor García Rivera, la cual sería para el uso de sus inquilinos.

En réplica, el 8 de julio de 2021, el señor García Rivera presentó su *Contestación a [la] Reconvención*. Mediante esta, negó lo alegado en la reconvención.

Así, el 6 de septiembre de 2022, se presentó una *Demanda Enmendada* a los efectos de sustituir al señor García Rivera por 3

A's como parte demandante. 3A's expuso que, el 31 de marzo de 2022, el señor García Rivera le vendió el terreno mediante la Escritura Número 114 otorgada ante el notario público Joel Rolando Rodríguez Sánchez. Asimismo, reiteró las alegaciones de la demanda original.

Tras varios trámites, el 25 de abril de 2024, Alameda presentó su *Solicitud de Sentencia Sumaria Parcial.* Argumentó que no se cumplieron con los requisitos legales para la acción de deslinde, por lo cual era improcedente. Alegó que tampoco era adecuada la acción reivindicatoria porque, aunque Alameda invadiera algunos metros de la finca colindante de 3A's, la causa de acción apropiada sería la de accesión a la inversa. Concluyó que no existían hechos materiales en controversia que le impidieran al tribunal disponer del asunto sumariamente.[2]

El 5 de junio de 2024, 3A's presentó su *Oposición a [la] Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria Parcial.* Arguyó que la pared que invade su finca fue construida con el único propósito de adquirir su terreno y desarrollar un estacionamiento que le beneficiaría a los arrendatarios de los apartamentos de Alameda. Razonó que los planteamientos de Alameda eran improcedentes en derecho, pero que sí se podría dictar sentencia sumaria parcial, y solo restaría celebrar una audiencia para determinar la cuantía de los daños reclamados.[3]

Luego de múltiples incidentes procesales, el 20 de febrero de 2025 se celebró una vista ocular, mediante la cual el foro primario verificó el área y la colindancia demarcada por una verja. Durante la vista, las partes estipularon el plano de mensura preparado por

---

[2] Junto a su escrito incluyó los siguientes documentos: Certificación Registral finca Garcia Sotelo; Escritura de Dación en Pago a R. Garcia Rivera; Escritura de Compraventa Alameda; Carta de 2019 a Alameda; Carta de 2020 a Alameda; Informe Pericial de demandante; Plano de Mensura por demandante; Fotografías Declaración Jurada por Alameda; Escritura de compraventa por 3A's.
[3] 3A's no anejó ningún documento a su escrito.

el agrimensor René Guerra Menéndez (en adelante, agrimensor Guerra Menéndez).

Consecuentemente, 10 de junio de 2025, el foro apelado produjo un documento intitulado *Sentencia* que luego fue acogido como resolución interlocutoria tras el dictamen de un Panel Hermano en el recurso TA2025AP00052 del 18 de julio de 2025 mediante el cual se concluyó que el TPI no dispuso del pleito en su totalidad, al este omitir su parecer sobre la reconvención de Alameda.

Conforme con lo decidido por este tribunal revisor, el TPI emitió una *Sentencia Nunc Pro Tunc* el 27 de enero de 2026, notificada y archivada en autos el 2 de febrero de 2026, la cual enmienda a la original a los efectos de adjudicar la reconvención de Alameda. Asimismo, dispuso sumariamente del recurso a favor de 3A's, declarando *ha lugar* a la acción de deslinde y *no ha lugar* a la reconvención de Alameda.

Así, el foro primario realizó las siguientes determinaciones de hechos sobre los cuales entendió que no existía controversia sustancial:

1. La parte demandante es una corporación debidamente inscrita en el Departamento de Estado con número de incorporación 482472 y su agente residente Alfred Anthony Annunziato con dirección física y postal en: 1109 Magdalena, San Juan, Puerto Rico 00907.

2. La parte demandada es una Corporación debidamente Inscrita y registrada conforme a las leyes del Estado Libre Asociado de Puerto Rico y autorizada a hacer negocios en Puerto Rico, con capacidad legal para demandar y ser demandada, siendo su número de incorporación el 331510 y su agente residente el Sr. Marvin Alameda Ramírez con dirección física y postal 27 calle Dr. Nelson Perea, Edificio Dr. Center, Mayagüez, Puerto Rico 00680.

3. El 30 de mayo de 2011, el Sr. Roberto García Rivera adquirió de sus padres, mediante escritura de dación en pago la siguiente propiedad que se describe a continuación:

---**URBANA**: Solar marcado en el plano con el número Cinco radicado en el barrio Algarrobo del término

Municipal de Mayagüez compuesto de mil quinientos treinta y siete metros con cincuenta centímetros cuadrados (1,537.50), en lindes:- por el Norte, por donde mide cincuenta y cinco (55) metros, con terrenos de don Senén Torres y doña Carmen D'Brasis, antes, ahora con área de uso público que da entrada a la Urbanización Mansiones de España y con terrenos de José Martí; por el Sur, por donde mide cincuenta (50) metros, con solar número Cuatro (4) del mismo plano de urbanización; por el Este, por donde mide treinta (30) metros, con terrenos de don Senén Torres y doña Carmen D'Brasis, antes, ahora con terrenos de la Urbanización Mansiones de España; y por el Oeste, por donde mide treinta (30) metros, colinda con la carretera número Dos que de Mayagüez conduce a Aguadilla, antes, ahora con la carretera número ciento cuatro (104).--------------------------------------------------------------

---En dicho solar existe una casa de cemento, con sótano dedicada a vivienda. --------------------------------

---Inscrita al folio ciento treinta y seis (136) vuelto del tomo quinientos veintiséis (526) de Mayagüez, finca número catorce mil ochocientos (14,800) e inscripción cuarta. -----------------------------------------------------------

4. El 18 de marzo de 2017, la parte demandada adquirió por escritura de compraventa la propiedad, según descrita a continuación:

---**RUSTICA**: Solar marcado con la letra A en el plano de inscripción radicado en el barrio Algarrobo y Miradero del término municipal de Mayagüez, Puerto Rico, con una cabida superficial de trescientos catorce punto siete cuatro seis ocho (314.7468) metros cuadrados, equivalentes a cero punto cero ocho cero cero (0.0800) cuerdas. En lindes por el NORTE, ESTE y OESTE, con varias alineaciones con la calle que da acceso a la Urbanización Mansiones de España; por el SUR, en dos (2) alineaciones con terrenos de Diego García. Enclava una casa. --------------------------------

5. El 31 de marzo de 2022, García Rivera vendió la propiedad a 3A's Investment, LLC. mediante Escritura Número 114 otorgada el 31 de marzo del 2022 ante el Notario Público, Joel Rolando Rodríguez Sánchez.

6. Las propiedades del demandante y del demandado, que se describen en el inciso 3 y 4 anterior, colindan entre sí.

7. Según la mensura preparada por el Ing. René Guerra Menéndez, la estructura enclavada en el solar de Alameda invade el terreno de 3A's Investment, LLC en dos áreas: 1) la primera, representa un área de 1.960 metros cuadrados; 2) la segunda, conlleva un área de 2.647 metros cuadrados.

8. El 11 de noviembre de 2019, el Demandante envío una carta al Demandado solicitando pasar "por la cola final" de su solar, adjuntando copia de una querella del

1973 que señala la construcción como provisional y ordena su demolición, advirtiendo además sobre líneas eléctricas y sanitarias debajo de la estructura que prohíben edificaciones.

9. El Demandado nunca ha realizado construcción en el solar en disputa, sino que adquirió el terreno tal cual vino del dueño previo.

10. El Demandante informó la extralimitación en la construcción de la finca Alameda en la carta del 1 de octubre de 2020, acompaño copia de la mensura.

**Determinaciones de Hechos sobre Inspección Ocular**:

11. Las partes estipularon el plano de mensura preparado por el Agrimensor René Guerra.

12. El agrimensor Guerra explicó y estableció que del área invadida por el demandado marcada con el número 1, que comienza y discurre desde el punto 151, y pasa al punto 163, luego al punto 162, y finaliza al punto 151 e identificó como el triángulo arrojando un área de 1.96 metros cuadrados.

13. El Área #1 ocupada por el Demandado corresponde a 1.960 metros cuadrados.

14. El Área #1 ocupada por el Demandado construyó un área en cemento armado utilizado para estacionamientos de vehículos.

15. El agrimensor Guerra explicó y estableció que del área invadida por el demandado marcada con el número 2, comienza en el punto 155, transcurre al punto 158, continua al punto 100, luego al punto 101, y finaliza al punto 155, arrojando un área de 2.647 metros cuadrados.

16. El Área #2 ocupada por el Demandado corresponde a 2.647 metros cuadrados.

17. El Área #2 ocupada por el Demandado construyó un área en cemento armado y verja en concreto armado.

18. El área en controversia está ubicada en la Calle Miguel Unamuno, frente a la entrada de la Urb. Mansiones de España.

19. El agrimensor Guerra explicó y estableció que el área que propone establecer la servidumbre de paso ocuparía un área aproximada de dos pies entre los puntos 147 al 161, y un área aproximada de 10 pies del punto 161 al 148.

20. El Área para constituir la Servidumbre de Paso corresponde a un área de 1.240 metros cuadrados del solar del demandado, comenzando en el punto 147 en línea recta transcurriendo al punto 148, luego transcurre al punto 161, y finaliza en el punto 147.

21. El Tribunal determina que ordenar la demolición de las áreas marcadas 1 y 2 es irrazonable, costoso y perjudicial para la parte demandada.

22. El Tribunal determina que ordenar la demolición del área marcada como #2 afectaría la estructura residencial que podría conllevar la demolición del inmueble en su totalidad.

El TPI concluyó que, tras la celebración de la inspección ocular, pudo constatar que:

[L]a parte demandada, en efecto, sí ocupó parte del terreno del demandante en varias áreas. En el área marcada número 1, la parte demandada construyó un área de estacionamiento de vehículos sobre el terreno de 3A's Investment, LLC. ocupando un área de 1.960 metros cuadrados. Al observar la colindancia y área en cuestión, junto al plano de mensura, determinamos que fue ocupada el área. De igual modo, en el área marcada número 2, la parte demandada construyó un área del inmueble y una verja sobre el terreno de 3A's Investment, LLC. ocupando un área 2.647 metros cuadrados

Con relación al área que se propone establecer la servidumbre de paso, entre los puntos 147 al 148, y del 148 al 161 con vuelta al punto 147 del plano de mensura, la cual tendría un área de 1.240 metros cuadrados del solar de Alameda, el foro *a quo* correlacionó que el área ocupada por Alameda es de 4.607 metros cuadrados *vis a vis* el área propuesta para establecer la servidumbre de paso. Por ende, 3A's ocuparía un área de 1.240 metros cuadrados del solar de Alameda; mientras que Alameda ha ocupado un área de 4.607 metros cuadrados en total.

Cónsono con lo anterior, el juzgador de los hechos dispuso que demoler el área construida podría ocasionar daños a la estructura de 3A's, el colapso del inmueble y/o gastos excesivos para Alameda. Además, opinó que demoler el área construida podría ser detrimental, toda vez que afectaría la estructura principal.

Así las cosas, fundamentado en el principio de equidad, el TPI declaró *Ha Lugar* la demanda incoada por 3A's y, en su consecuencia ordenó a Alameda establecer una servidumbre de paso, a favor de 3A's, entre los puntos 147 al 148, y del punto 148

al punto 161, con vuelta al punto 147 del plano de mensura teniendo un área de 1.240 metros cuadrados. Además, declaró *No Ha Lugar* la reconvención presentada por Alameda.

De igual modo, el foro de instancia ordenó lo siguiente:

[A] la parte demandante a ceder a la parte demandada, sin costo alguno, las áreas invadidas e identificadas con el punto 101 al punto 100, del punto 100 al punto155 y, del punto 155 al punto 158, con vuelta al 101, teniendo un área de 2.647 metros cuadrado, así como el área invadida 2, identificada con el punto 162 al punto 151 y del punto 151 al punto 163, con vuelta al punto 162, teniendo un área de 1.960 metros cuadrados, ambas áreas según identificadas en el plano de mensura.

[A] las partes a otorgar los correspondientes instrumentos públicos para realizar la rectificación de cabida y constitución de servidumbre de paso conforme a lo establecido en esta Sentencia en las correspondientes fincas para su calificación e inscripción en el Registro de la Propiedad, Sección de Mayagüez.

Inconforme, el 2 de marzo de 2026, Alameda acudió ante este foro revisor mediante una *Apelación* señalando la comisión de los siguientes errores:

El TPI err[ó] al emitir *Sentencia Nunc Pro Tunc*.

Err[ó] el TPI al emitir sentencia sumaria a favor del demandante y desestimar la reconvenci[ó]n del apelante.

Err[ó] el TPI al no dictar sentencia sumaria a favor del apelante.

Por su parte, 3A's presentó su *Oposición a[l] escrito de Apelación* el 26 de marzo de 2026.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A.

La Regla 36 de las de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios

civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, res. el 7 de enero de 2025, 2025 TSPR 1; *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023).[4] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de

---

[4] Véase, además: *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de las de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

La Regla 36.4 de las de Procedimiento Civil establece que, si no se dicta sentencia sobre la totalidad del pleito ni se concede todo

el remedio solicitado o se deniega la moción de sentencia sumaria, y, por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4.

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial, y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme con ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Nuestro Más Alto Foro ha pautado que este

Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González v. M. Cuebas,* supra, págs. 118-119. Es decir, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Íd.*

**B.**

La acción de deslinde permite esclarecer los linderos confundidos o inciertos entre dos fincas contiguas. *Ramírez Quiñones v. Soto Padilla,* 168 DPR 142, 157 (2006); *Zalduondo v. Méndez,* 74 DPR 637, 641-642 (1953); *Zayas v. Autoridad de Tierras,* 73 DPR 897, 901 (1952). Esta causa de acción es imprescriptible y se puede instar con la citación de los dueños de los predios colindantes. *Ramírez Quiñones v. Soto Padilla,* supra, pág. 158.

Es menester precisar que una sentencia de deslinde no discute la eficacia de los títulos inmiscuidos, sino que solo precisa las colindancias entre los inmuebles involucrados. *Íd.*; *Zayas v. Autoridad de Tierras,* supra, pág. 901, citando a *La O v. Rodríguez,* 28 DPR 636, 638 (1920).

Una demanda de deslinde deberá incluir: (1) la descripción del inmueble; (2) el interés del demandante sobre él; (3) el nombre del poseedor de la finca; (4) la razón de la solicitud del deslinde, y (5) el requerimiento de esclarecimiento de linderos anterior realizado a la otra parte junto con su respuesta negativa. *Zalduondo v. Méndez,* supra, pág. 641.

**C.**

El Artículo 741 del Código Civil dispone que el derecho de propiedad conlleva las facultades de gozar, disponer y accionar para recuperar la cosa objeto de propiedad. 31 LPRA sec. 7951. Este precepto dispone que un propietario tiene disponible una "acción contra el tenedor y el poseedor de la cosa para reivindicarla". *Íd.* Esta facultad para recuperar la propiedad surge del derecho que tiene un

propietario de excluir a terceros para que no interfieran con el uso, disfrute o disposición del objeto de su derecho. S*oc. Gananciales v. G. Padín Co., Inc.,* 117 DPR 94, 100 (1986); J. Puig Brutau, *Compendio de Derecho Civil,* Vol. III, Ed. Bosch, Barcelona, 1989, pág. 44.

Para que prospere una demanda en reivindicación se debe establecer: (1) que el demandante tiene un derecho de propiedad sobre la cosa que reclama; (2) que la acción se dirija contra quien tenga la cosa en su posesión; (3) que el demandado no pueda oponer ningún derecho que justifique su pretensión de retener la cosa frente al propietario, y (4) que se identifique, de manera precisa y clara, la cosa que se reivindique. J. Puig Brutau, *op. cit.,* págs. 46-47.

Se ha expresado, además, que el objeto de la reivindicación no es recobrar cualquier cantidad de terreno sino una cantidad específica y determinada. *Castrillo v. Maldonado,* 95 DPR 885, 891 (1968). Así también, se ha establecido que, en una controversia de reivindicación, es indudable que los planos, constituyen parte de la evidencia que puede utilizar un tribunal para restablecer a su verdadera situación los límites de diversos fundos. *Íd.*

El demandante viene obligado a probar su título y no puede descansar únicamente en los vicios que tenga el título del demandado. *Ramírez Quiñones v. Soto Padilla,* 168 DPR 142, 157 (2006); *Castrillo v. Maldonado,* supra, pág. 891; *Meléndez v. Almodóvar,* 70 DPR 527, 532 (1949). Cumplido esto, corresponde al demandado señalar y probar su mejor título. *Ramírez Quiñones v. Soto Padilla,* supra, pág. 157; *Arce v. Díaz,* 77 DPR 624, 628-629 (1954).

Si el poseedor cuenta a su favor con cualquier título legítimo para seguir poseyendo la cosa, así se derive de un derecho real limitado o de cualquier otra circunstancia, la acción reivindicatoria pierde su sentido. Carlos Lasarte, *Propiedad y Derechos Reales de*

*Goce: Principios de Derecho Civil IV*, Marcial Pons, Madrid, 2010, pág. 137. Por tanto, para que prospere la acción reivindicatoria la situación posesoria del demandado debe ser infundada, carente de título en sentido material que justifique la posesión.

**III.**

Por estar estrechamente entrelazados, discutiremos los tres planteamientos de error de manera conjunta.

En su primer señalamiento de error, Alameda sostiene que el foro *a quo* incidió al enunciar una sentencia *nunc pro tunc* cuando realmente es una enmendada. Además, argumenta que el TPI se equivocó al dictar sentencia sumaria a favor de 3A's y al desestimar su reconvención, fallando, a su vez, sumariamente en su contra.

Por su parte, 3A's alega que el TPI actuó correctamente a su favor porque no existía controversia en los hechos materiales del caso que le impidiera disponer sumariamente de él. Asimismo, puntualiza que se evidenció que Alameda ocupó su terreno en diversas áreas y construyó un estacionamiento de vehículos sobre su propiedad que ocupa 1.960 m². También, enfatiza que Alameda construyó un inmueble y una verja que ocupa 2.647 m² de su terreno. Así, manifiesta que se cumplieron los requisitos legales de la acción de deslinde. Hace hincapié en que el plano de mensura fue estipulado durante la vista ocular. Aduce que el foro apelado no se equivocó al ordenar que no se demoliera la estructura porque pudiese causar daños a ambas partes y afectar el inmueble principal. En esa dirección, entiende que el TPI no erró al determinar que procedía establecer una servidumbre de paso fundamentado en los principios de equidad. Es su contención que corresponde confirmar el dictamen apelado.

En su recurso, Alameda afirma que el foro primario determinó equivocadamente que lo más conveniente era establecer una servidumbre de paso, toda vez que era la vía menos onerosa para

resolver la disputa entre las partes. Igualmente, subraya que la edificación construida descansa sobre su terreno y no se extralimita hacia el de 3A's, y que esta ya existía al momento en que compró la finca. Por último, especifica que se cumplen con los requisitos legales de la figura de la accesión a la inversa y que 3A's no logró controvertir esto con prueba suficiente. Por todo lo anterior, concluye que el TPI debió dictar sentencia sumaria a su favor.

Por tratarse de una sentencia sumaria, esta Curia debe evaluar *de novo* las solicitudes a favor y en contra de tal proceder, en unión a la documentación que surge del expediente. Adelantamos que, luego de un análisis detenido del récord, así como de la normativa aplicable, concluimos que incidió el foro primario al conceder el remedio sumario en cuestión. Por tanto, se cometieron los errores precisados. Veamos.

Tras una lectura detenida de ambos petitorios sumarios se desprende que 3A's y Alameda incumplieron con varios requisitos de forma de la Regla 36 de las de Procedimiento Civil, *supra.* Por ejemplo, Alameda no incluyó evidencia testimonial relacionada con el *Informe Pericial* preparado por el agrimensor Guerra Menéndez, lo cual hace que este documento sea inadmisible e insuficiente por sí solo. Similarmente, Alameda no incluyó una certificación registral válida expedida por el Registro de la Propiedad, sino que adjuntó una copia de los folios históricos de la finca.

De otro lado, 3A's demostró en su oposición y solicitud de sentencia sumaria un craso incumplimiento con las Reglas de Procedimiento Civil, *supra,* al no incluir declaraciones juradas, evidencia documental o prueba adicional alguna que sustentara su moción. Tampoco hizo alusión a los hechos incontrovertidos propuestos según enumerados por Alameda, más bien se limitó a proponer dos (2) sin apoyo en evidencia alguna.

Sumado a la aludida inobservancia contra nuestros preceptos procesales, encontramos que existe controversia en hechos materiales que hace necesaria la celebración de un juicio plenario. Esto debido a que, es conveniente justipreciar el testimonio pericial del agrimensor para esclarecer los pormenores de los linderos entre las dos (2) fincas porque, aunque existe un plano estipulado entre las partes, no queda claro exactamente cómo se practicó la mensura o cómo se debe interpretar el informe presentado en evidencia.

En ese sentido, colegimos que del expediente presentado no surge que en la solicitud de sentencia sumaria se haya presentado evidencia suficiente para que el foro primario pueda determinar toda la verdad de los hechos.

Por último, debemos destacar que, en algunos casos, no es conveniente disponer de un caso sumariamente por su naturaleza. Véase *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 734 (1994).

Por tanto, concluimos que el foro primario erró en su determinación y procede revocar la *Sentencia Nunc Pro Tunc* apelada. En vista de ello, acogemos las determinaciones de hechos incontrovertidos 1-20 realizadas por el TPI.

**IV.**

Por los fundamentos antes esbozados, ***revocamos*** la *Sentencia Nunc Pro Tunc* apelada. Se devuelve al caso al Tribunal de Primera Instancia para la continuación de los procedimientos, conforme lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones